JOHN J. CASSIDY ET AL. *vs.* THE TOWN OF SOUTHBURY.

Third Judicial District, New Haven, June Term, 1912.

HALL, C. J., PRENTICE, THAYER, RORABACK AND WHEELER, Js.

The purpose of the written notice of claims for damages for injuries occasioned by defective roads and bridges, which must be given under General Statutes, § 2020, is to furnish the adverse party such warning as will prompt him to take steps for his protection and such information as will furnish a reasonable guide to that end.

The change in the law upon that subject made by the Public Acts of 1895, chapter 172 (p. 534), was intended to emphasize the generality, and not the particularity, of the description of the injury required in such notice.

The extent of the burden of furnishing such information is to be determined by the circumstances of the case, in the light of the purpose of the statute, and with a view that it be not increased by a demand for information which either could not reasonably be expected, or, if given, would not, from its nature, be helpful to the other party.

The injury of which notice is required is that which has befallen the claimant. When it has resulted from harm done to property, the description required is one which meets the purpose of the statute.

The plaintiffs' written notice of their claim stated, as to the injury complained of, that as a result of the accident their "horse was injured and has greatly deteriorated in value;" that their "wagon was injured and damaged greatly;" that they "lost the use of said horse and wagon for a period of several weeks"; and that they would "claim damages for their said loss and damages" from the defendant. The allegations of the complaint in respect of the injuries differed from the notice in that they included certain matters of special damage, attached money valuations to the several items of injury, and described more specifically the injuries to the horse; otherwise they were substantially the same. Upon a demurrer it was *held* that the notice was sufficient to support a recovery for the injuries recited in the complaint.

It is not necessary, in the notice, to set out consequential damages resulting from the injuries described; nor is it necessary to attach money valuations to the several items of such injuries.

Argued June 5th—decided July 26th, 1912.

ACTION to recover damages for injuries to the horse and wagon of the plaintiffs through the alleged neg-

ligence of the defendant in not maintaining a guard-rail or barrier upon the side of the highway at the place of the accident, brought to the District Court of Waterbury where a demurrer to the complaint was sustained (*Meigs, Deputy-Judge*) and judgment rendered for the defendant, from which the plaintiffs appealed. *Error and cause remanded.*

The complaint alleges that the plaintiffs' horse and wagon, while traveling upon a highway in the defendant town, were injured through the negligent conduct of the defendant in its want of care of such highway. It is alleged in one paragraph that the highway was defective and unsafe to the knowledge of the selectmen, and in others that it was unsafe for public travel by reason of the want of a railing or fence along one side of it, the highway on that side being so made and raised above the adjoining ground as to be unsafe, and the failure to maintain such railing or fence is charged as negligence. The subsequent allegation is that the injuries were caused by the defendant's negligence in not maintaining a railing or fence along the side of the road at the point stated.

The injuries sustained are alleged as follows: "Said horse was injured about the legs and body, and lamed and permanently injured, so that he is now worth two hundred dollars less than before said fall; and the plaintiffs have expended twenty-five dollars for medicine and medical attendance in endeavoring to cure said horse; said wagon was injured so that it is now worth fifty dollars less than it was before said fall, as a consequence of said fall; and the plaintiffs have expended or will be obliged to expend thirty-five dollars in repairing the damage to the same; the plaintiffs lost the use of the said wagon and horse for a period of two months, which loss of use is worth one hundred and twenty dollars."

Seasonable written notice to a selectman is alleged.

That portion of it which relates to the injury and claim is as follows: "Said horse was injured and has greatly deteriorated in value as a result of said accident. Said wagon was injured and damaged greatly as result of said accident. The undersigned lost the use of said horse and wagon for a period of several weeks as a result of said accident. They will claim damages for their said loss and damages from you the said town of Southbury."

*Herman J. Weisman,* for the appellants (plaintiffs).

*Lawrence L. Lewis,* for the appellee (defendant).

PRENTICE, J. The complaint in this case was successfully demurred to upon the ground that it appeared that no sufficient notice descriptive of the injury complained of had been given to the defendant, as required by § 2020 of the General Statutes. The plaintiffs contend that the action of the court in sustaining this demurrer was erroneous for two reasons, to wit: First, that, as the complaint stated a cause of action under § 2019 of the General Statutes, a notice, as provided in § 2020, was not a necessary condition precedent to its maintenance; and second, that the notice given, as set out in the complaint, was a sufficient one under § 2020. We have no occasion to notice the first of these claims, since, in our opinion, the notice alleged to have been given sufficiently complies with the requirements of § 2020.

Our statutory requirement of notice of claims for damages for injuries occasioned by defective roads and bridges, forming a portion of § 2020, has passed through three pertinent stages of development. As originally adopted in 1874, it provided for a "written notice of such injury, and the time and place where it occurred."

Public Acts of 1874, p. 196, Chap. 23. In 1883 it was changed, so that the notice was to be "of such injury, and the nature and cause thereof, and of the time and place of its occurrence." Public Acts of 1883, p. 283, Chap. 105. In 1895 it was made to assume its present form, requiring "written notice of such injury and a general description of the same, and the cause thereof, and of the time and place of its occurrence." Public Acts of 1895, p. 534, Chap. 172. As no question is made in the present case as to the sufficiency of the notice in respect to "cause," "time," and "place," we may dismiss those elements of the prescribed notice from our consideration.

In *Tuttle* v. *Winchester*, 50 Conn. 496, 500, decided in 1883, it was held that the original statute, which governed the case, contained no requirement that the notice should state the character of the injury. That being so, little of present pertinence is to be expected from the decisions which antedate the amendment of 1883, which, quite probably, was brought about by either the conclusion of the court in the *Tuttle* case, just stated, or the discussion which that case invoked before its decision.

During the twelve years that passed after the amendment of 1883 and prior to that of 1895, a very considerable number of cases involving the question of the sufficiency of notices arose, which were brought to this court. The law, it will be remembered, called for a notice of the "nature" of the injury. These cases presented a great variety of conditions, so that, first and last, there was in the opinions a thorough discussion and comprehensive determination of the purpose sought to be accomplished by the enactment, the construction to be given to it, and the principles to be observed in its application to concrete situations. The conclusions embodied in these opinions are, in substance, that the statu-

tory notice was not prescribed to throw useless obstacles in the way of a claimant; that its sole purpose was to furnish the party against whom a claim was to be made such warning as would prompt him to make such inquiries as he might deem necessary or prudent for the preservation of his interests, and such information as would furnish him a reasonable guide in the conduct of such inquiries, and in obtaining such information as he might deem helpful for his protection; that, being required to be furnished by plain men, and oftentimes by men of limited education, there was no intention that it be couched in technical language, or expressed with the nicety or exactness of a pleading, or contain a description of the injury in detail; that the sufficiency of the notice was to be tested with reference to the purpose for which it was required; that, if sufficient for that purpose, it was a good notice; that a general description, which would apprise the one to whom it was given of the general nature of the injury, was sufficient; and that the extent of the burden of furnishing information upon that subject was one which was to be determined by the circumstances of the case, and with a view that it be not unreasonably increased by a demand for information which either could not reasonably be expected, or, if given, would not, from its nature, be helpful to the other party. *Brown* v. *Southbury*, 53 Conn. 212, 213, 1 Atl. 819; *Lilly* v. *Woodstock*, 59 Conn. 219, 221, 22 Atl. 40; *Gardner* v. *New London*, 63 Conn. 267, 272, 28 Atl. 42; *Budd* v. *Meriden Electric R. Co.*, 69 Conn. 272, 285, 37 Atl. 683.

These conclusions as to the purpose of the statutory notice and the principles to be observed in determining whether the requirements of the statute have been met, have been frequently restated, either in terms or in substance, and reaffirmed since the change of phraseology made in 1895. *Breen* v. *Cornwall*, 73 Conn. 309,

312, 47 Atl. 322; *Judd* v. *New Britain,* 81 Conn. 300, 303, 70 Atl. 1028; *Thorson* v. *Groton & Stonington Street Ry. Co.,* 85 Conn. 11, 12, 81 Atl. 1024.

But there remains to be considered, before arriving at the present state of the law, the amendment made in 1895. A study of the situation existing when it was passed, and of the change in language which was then made, leads to the conclusion, first, that the change in language had for its object the purpose of making a change in the requirement as to the description of the nature of the injury—a change either in the direction of greater strictness or greater liberality. If there was no such object sought to be attained, there would seem to have been no excuse for the legislation, since no other alteration was made in the existing statute. This study leads quite unmistakably to the further conclusion that the intent of the change was to emphasize the generality, and not the particularity, of the description of the injury. Its design was not to make the requirements in that regard more strict and technical, but less so, so that the burden placed upon a claimant should be no greater than was involved in a general description, sufficient to apprise the other party of the general character of the injury fairly, and to such an extent as might be reasonably necessary, under the circumstances, to reasonably protect his interests.

It is to be noticed, in this connection, that the injury of which the statute requires notice to be given is the injury to the claimant. General Statutes, § 2020. Where that injury results, as in this case, from harm done to property, the injury to the owner comes from that source; and what the statute requires is such description of that source as will meet the purpose of the statutory requirement, as above set forth.

We have now to compare the allegations of injury

contained in the complaint with the statements in the notice, in the light of these principles.

It is to be noticed, first of all, that the complaint sets out certain matters of special damage, such as the claimed expenditure for medical attendance and medicines and the loss of the use of the injured horse and wagon. These allegations were necessary to recovery under the recognized rules of pleading. Statements of such damage were unnecessary to the notice. "'The general description of the injury' required is of the direct or immediate injury to person or property caused by such described act of negligence, and not of consequential damages which have or which may result from such injury." *Peck* v. *Fair Haven & W. R. Co.*, 77 Conn. 161, 164, 58 Atl. 757.

Again, the complaint attaches money valuations to the several items of injury recited. This was not called for in the notice.

Omitting these two features from the averments of the complaint, we find that the injury to the wagon is fully as specifically stated in the notice as in the complaint. That to the horse differs only in that the statement of the notice that the horse was injured and greatly deteriorated in value is transformed into one that he was injured about the legs and body and lamed and permanently injured. The latter statement is, in some respects, more specific; but in what material respects the notice failed to reasonably inform the defendant of anything that concerned its interest to know for its protection it is difficult to discover. The notice was not an ideal one; but, in our opinion, it would call for the application to the situation of more strict and technical rules than our statute, as it has been repeatedly construed, justifies, to hold that it was insufficient, in its information conveyed of the injury to the plaintiffs as the property owner, to support a recovery for the injuries

recited in the complaint. The complaint may be more specific than the notice. *Breen* v. *Cornwall*, 73 Conn. 309, 314, 47 Atl. 322.

This cause was here upon a former occasion. 85 Conn. 221, 82 Atl. 198. Upon its return to the trial court, the defendant moved that it be permitted to withdraw its answer and file instead a motion to direct the plaintiffs to set out the notice in full in their complaint. This was permitted and done. The defendant thereupon demurred, thus presenting the question already discussed. The appeal assigns the court's action in this matter as erroneous. This assignment is not pursued.

There is error, the judgment is reversed, and the cause remanded to be proceeded with according to law.

In this opinion HALL, C. J., THAYER and RORABACK, Js., concurred.

WHEELER, J. (concurring). I concur in the result, but disagree with the ground of the opinion.

General Statutes, § 2020, as amended by chapter 168 of the Public Acts of 1909, p. 1099, makes the giving of a written notice, in an action commenced over sixty days after an injury by means of a defective road or bridge, a prerequisite to its maintenance. Among other things, the statute provides that any person injured in person or property may recover; but no action for any such injury shall be maintained "unless written notice of such injury and a general description of the same" be given.

The only description of the injury in the notice given in this case was: "Said horse was injured and has greatly deteriorated in value as a result of said accident. Said wagon was injured and damaged greatly as a result of said accident. The undersigned lost the use of

said horse and wagon for a period of several weeks as a result of said accident."

This statute, as it existed between 1874 and 1883, only required written notice of the injury to be given. Between 1883 and 1895, the statute required written notice of the injury, and of the nature and cause thereof, to be given. Since 1895, the statute has required "written notice of the injury and a general description of the same," to be given.

Under the first period of this statute, perhaps, the notice in this case would have been sufficient. The statute then merely required notice of such injury, and no general or particular description of the same. *Tuttle* v. *Winchester*, 50 Conn. 496. Under the second period, this notice would not have been sufficient. The notice required under the third period of this statute, was clearly intended to provide for a less description of the injury than was required by the second period, and a larger description than was required by the first period.

The purpose of the notice is to apprise the person notified, of the general character of the claimed injury, fairly, by giving him a general description of the injury, so that he may reasonably protect his interests. To accomplish this end, the statute provides for "notice of such injury and a general description of the same." This requires a reasonable attempt at description of the general character of the injury, and here we find no such attempt made, either particularly or generally. A notice of the mere occurrence of the injury, such as we find in this notice, is not a notice of the injury and a general description of the same. To so hold is to ignore entirely the words "general description of the same."

It is not the duty of the court to remake statutes which seem to it to serve no useful public purpose. It

should interpret them as it finds them, and leave the consequences for the consideration of the legislative department. "It is not our office to legislate. The legislature of the State has, in the statute enacted, declared its will. This declaration is in plain, direct and unambiguous terms. There is no uncertainty about it. Its intent and phraseology are alike clear and unmistakable. Nothing could appear more certainly from a reading of it than that the General Assembly did not choose to limit its operation as suggested. There is no room for construction as suggested, and our power over the statute is therefore at an end." *Colchester Savings Bank* v. *Brown,* 75 Conn. 69, 71, 52 Atl. 316. If the intent of the opinion be to draw a distinction between the character of the notice required in case of injury to one's person, and in case of injury to one's property, I am of the opinion that the terms of the statute itself show so clearly that such a distinction is not tenable that argument is unnecessary.

When we were called upon to consider this case before, no claim was made by the plaintiffs upon their brief that this action had been brought under General Statutes, § 2019, rather than § 2020, and hence no notice was required to be given, and we did not then consider this point. The complaint was plainly susceptible of a construction that it was brought under § 2020; the parties apparently so treated it and regarded the notice as essential; and we had no occasion to consider the complaint susceptible of any other interpretation.

Our attention is now directed to the claim that the complaint is more properly interpreted as brought under General Statutes, § 2019; and that this section requires no notice to be given of the injury.

The complaint comes directly within the terms of the action provided for by General Statutes, § 2019. So that the disputable question is whether the notice pro-

vided in § 2020 is a prerequisite to an action brought under § 2019.

We think the point was practically decided in *Seidel* v. *Woodbury*, 81 Conn. 65, 71, 70 Atl. 58. It was there held that § 2019 applies to conditions existing outside the limits of the highway, and imposes upon towns a special duty, different and apart from the governmental duty imposed by General Statutes, § 2020. So that the actions provided for by these two statutes are entirely independent of each other, and rest upon totally different breaches of duty.

Since the action under § 2020 has no relation to that under § 2019, the notice provided for by § 2020 can have no relation to § 2019, and this section provides for no notice of any kind. *Upton* v. *Windham*, 75 Conn. 288, 291, 53 Atl. 660.

After issue was joined and trial on the merits had in this case, the trial judge, upon the theory that this action was brought under § 2020, directed a verdict because of the insufficiency of the notice. We held the judge in error, saying: "The defendant having admitted the legal sufficiency of the notice of the injuries could not thereafter recede from this position, and the court could not, *sua sponte*, nor upon the defendant's request, inject this issue in the case."

After this decision the defendant moved, in the court below, for permission to withdraw its answer and file a motion for a more specific statement. The court, by *Deputy-Judge Meigs*, granted the motion, and thereupon plaintiffs amended their complaint by inserting a copy of the notice. The defendant demurred to the complaint as amended, on the ground that the notice was defective. The trial court sustained the demurrer, and from the judgment thereon this appeal was taken.

The granting of permission to withdraw the answer, and of the motion for a more specific statement, was,

in my judgment, a clear abuse of discretion on the part of the trial judge. The case had been tried on the merits; this court had passed on the appeal; the defendant was, during all this time, before the court, admitting by its pleadings the legal sufficiency of the notice; it was then too late to begin the case over again and test a notice whose legal sufficiency had been admitted down to the charge to the jury. *Interest reipublicæ ut sit finis litium.*